## Loans to Individuals

FREDERIC G. ANTOUN and HERBERT N. SHENKIN, Deputy Attorneys General, and ANNE X. ALPERN, Attorney General, August 12, 1959.—You have re-

quested the advice of this department as to whether or not a company licensed under the Small Loans Act of June 17, 1915, P. L. 1012, as amended, 7 PS §751 et seq., may legally make loans to individuals, at interest rates authorized by the act, for the purpose of paying automobile insurance premiums.

Sections 1 and 2 of the act, as last amended by the Act of June 2, 1953, P. L. 262, 7 PS §§751 and 755, provide:

"On and after the passage of this act, it shall be unlawful for any person, persons, partnership, association, or corporation, within this Commonwealth, to make a loan of money, credit, goods, or things in action, in the amount or of the value of six hundred ($600) dollars or less, either with or without security, to individuals pressed by lack of funds to meet immediate necessities, and charge, contract for or receive on, any such loan a rate of interest, discount, fines, charges, or consideration, greater than six per centum (6%) per annum, without first obtaining a license from the Secretary of Banking in accordance with the provisions of this act.

"Any person, persons, copartnership, association, or corporation who shall obtain a license in accordance with the provisions of section one of this act, shall be entitled to loan money in sums of six hundred ($600) dollars or less, either with or without security, to individuals pressed by lack of funds to meet immediate necessities, at his, their or its place of business, for which said license is issued, and to charge the borrowers thereof, for its use or loan, interest at a rate not to exceed three (3) per centum per month on that part of the unpaid principal balance of any loan not in excess of one hundred fifty ($150) dollars, and two (2) per centum per month on that part of the unpaid principal balance of any loan in excess of one hundred fifty ($150) dollars but not in excess of three hundred

($300) dollars, and one (1) per centum per month on any remainder of such unpaid principal balance. . . ."

Your request for advice refers to this department's Informal Opinion No. 662 on January 14, 1936, directed to the Secretary of Banking, which concluded that a company engaged in the business of lending money to individuals for the payment of insurance premiums, including automobile insurance premiums, did not have to secure a license under the Small Loans Act. The necessary implication of the 1936 opinion is that a company which is licensed by the Small Loans Act may not legally make such automobile insurance premium loans, and you have, accordingly, requested this department to reconsider the matter.

Informal Opinion No. 662 was based on the premise that a loan to pay an insurance premium is not a loan "to meet immediate necessities" within the meaning of sections 1 and 2 of the Small Loans Act, supra, and in establishing this premise the department relied upon the following reasoning:

"The term 'necessities' is relative. . . . In like manner, while an automobile may be a necessity in some cases, it does not follow that insurance on the automobile is a necessity. Nor does it follow that insurance against damage to persons and property that may be done by an automobile is a necessity. . . .

"Not only must the loan be made to meet necessities, but the necessities must be immediate. From its very nature insurance provides no immediate benefit. It is intended to meet some future loss or contingency. . . ."

It is now the opinion of this department that your request for advice must be answered in the affirmative, and that Informal Opinion No. 662, insofar as it holds to the contrary, must be overruled. Whatever validity the 1936 ruling of this department may have had at the time, it cannot be seriously questioned today that automobile insurance is, for most people, a necessity.

The 1936 opinion conceded that the driving of an automobile was a necessity in some cases. The radical changes that have occurred in our way of life during the past 23 years have placed such heavy emphasis upon the use of the automobile that it has become, for the vasty majority of people and especially those who are apt to finance the payment of automobile insurance premiums under the Small Loans Act,[1] a virtual necessity. Documentation of this proposition is now hardly necessary beyond a reference to the following factors: The spreading of the population into suburban and more distant areas, the concomitant improvement of automobiles and roads, the increasing reliance upon the automobile in the performance of daily work, the breakdown of mass transportation in many areas and the inevitable substitution of the automobile for other means of transportation.

Today, no prudent person would operate an automobile without insurance. The hazards of modern driving are such that persons in the low and middle income groups, those most likely to borrow money from a company licensed under the Small Loans Act for the payment of automobile insurance premiums, could be made destitute at any moment by an accident. Statistics need not be cited; these facts are a matter of common knowledge.[2]

This demonstrable and well recognized fact has been

---

[1] It should be recognized that it is only the marginal credit risk that would deal with a small loan company. Most new cars are financed, and automobile insurance premiums are usually included in the financing contract, or the insurance is placed directly with an insurance company of the purchaser's choice. These companies usually permit installment payment of the insurance premium at relatively low rates of interest. It is only the poor credit risk owner who would be forced to borrow money from a small loan company to finance automobile insurance premiums.

[2] No valid distinction can be made between liability and collision insurance; the rationale of this opinion applies to both.

receiving greater legislative attention. Although Pennsylvania has not yet enacted a compulsory insurance law, a number of other states have done so. However, we do have the Motor Vehicle Safety Responsibility Act of June 1, 1945, P. L. 1340, as amended, 75 PS §§1277.1 et seq., which, in certain circumstances, requires a motorist as a practical matter to secure insurance before a driving license will be issued or reissued to him.

The remaining question is whether a loan to purchase automobile insurance is a loan "to meet immediate necessities" within the meaning of the Small Loans Act. "Necessaries," which is the equivalent of "necessities," has been defined as "things indispensable, or things proper and useful, for the sustenance of human life. . . ."[3] The word "immediate" in the above phrase is largely redundant. A "necessity" is by definition "immediate"; things "indispensable, etc.," are immediately necessary. To the extent, however, that the word "immediate" lends any additional emphasis to "necessities," the views expressed in this opinion are nevertheless applicable. If what has been said before is true, the necessity is immediate, for the moment a driver gets behind the wheel the hazard is present. If the automobile is a necessity, automobile insurance is an immediate necessity.[4]

Accordingly, you are advised that a company licensed under the Small Loans Act may make loans to individuals, at present rates authorized by the act, for the purpose of paying automobile insurance premiums. To the extent that Informal Opinion No. 662 holds to the contrary, it is hereby overruled.

---

[3] Black's Law Dictionary, 3rd Ed. (1944), p. 1226.

[4] There may be instances where automobile insurance is not a necessity, but this could be true with respect to food, clothing, etc. A millionaire may not need automobile insurance. We are not dealing with isolated, nontypical cases.